We'll turn to 21-1317, Citizens v. United States. When we had Zoom, we'd just push a button and you'd be there. We wouldn't have these delays. Mr. Pettinato, are you ready? Okay. May it please the Court, my name is Jared Pettinato, and I represent Citizens for Constitutional Integrity and Southwest Advocates Incorporated. Every time the Supreme Court has faced a veto that Congress has innovated, it has struck down that veto. It struck down the one-house veto in INS Vitata. It struck down the nine-item veto in Clinton v. New York. The Congressional Review Act veto is unconstitutional based on the same principles. Well, wait. They were struck down because they didn't follow the constitutional process for passing legislation, which is passing a majority of both houses and signed by the President. The Congressional Review Act provides for that, does it not? Although the Congressional Review Act does provide for bicameralism and presentment, it does not follow every constitutional restraint. And that is the principle from Ballin, argued by Solicitor General Taft. The requirement for passing legislation requires compliance with all of the constitutional procedures. And these here did not comply with the separation of powers, they did not comply with equal protection, and they did not comply with due process. Those are separate constitutional provisions, not the ones relating specifically to the passage of legislation. You may be right that there's a constitutional problem, but it's definitely distinguishable from the cases you started with, where bicameralism and presentment, as you described it, were missing. Do you agree with that? I would agree that there is bicameralism and presentment here. I do not agree that they're distinguishable. For example, when we talk about Article I, Section 7 compliance, the text of Article I, Section 7, for example, requires a pocket veto alternative. But the Congressional Review Act does not provide for any pocket veto alternative. So even by its text, it doesn't actually comply with Article I, Section 7. I don't recall that argument. It's in our reply brief, Your Honor. That's a little late, isn't it? Well, it's consistent with response to what the United States Department of Justice argued. They argued that bicameralism, presentment, and compliance with every part of Article I, Section 7. And we said, no, Your Honor, it doesn't comply with every part of Article I, Section 7. Okay, well, let me ask you about the pocket veto then. I'm not sure you preserved it, but let's address it briefly. In what way does it not? Because if the President doesn't sign it, it has no effect, right? Under the Congressional Review Act, does it require the President to act to sign? In what way does it not? Well, the pocket veto requires it to become law if the President doesn't sign it. And so here, it requires signature. So in that sense, it does not comply with the pocket veto and the pocket veto cases. But all of these come down to Article I, Section 7. And so part of Article I, Section 7 also deals with the voting thresholds. And again, to the ballot case, the Supreme Court decided that in the United States, the correct voting threshold for passing legislative power for Congress to exercise its legislative authority requires a majority of a quorum. And that is what we are facing here, is Congress essentially changing and manipulating those voting thresholds for different purposes to treat different people differently, for equal protection, to undermine the executive branch, for separation of powers. And that purpose, that intent, that objective of changing those voting thresholds itself is an illegitimate objective and violates due process. Following up on Judge Hart's conversation about the pocket veto, it leads me to ask the question, are you challenging independently the Review Act and the cloture rule? Or are you saying that, I think in your reply brief, you used the word system. Are you saying that the system of these two interacting is unconstitutional? Which is it? It is a system, Your Honor. Yes, exactly. It is the operation of these two different statutes that set different thresholds, and that system violates the Constitution. Okay. Well, that said, then the whole pocket veto conversation becomes really irrelevant. I mean, you're not making a stand-alone, chada-type constitutional defect argument. You're saying that somehow or other, the interplay of these two works a unconstitutional result, right? Absolutely. Okay. Well, to that point, what I'm struggling with is this notion that, I think you used the phrase somewhere in your reply brief of labels don't matter or something like that as it relates to the cloture rule. And why doesn't it matter? The cloture rule is a rule. It is a rule of the Senate. It is not a piece of legislation. So it is not like the Caroline products, the little footnote where you had all these laws that impede process. This is not a law. The Senate could change it tomorrow. And so I don't understand why labels don't matter, because what you have is the interaction between a law and a Senate rule. I'll stop there. Explain to me why it really does matter and why something like Caroline products, the footnote four that you threw around so much in the reply brief, why that even matters. Well, Your Honor, the Congressional Review Act arguably is another rule itself. It's a statute. It's not a rule. Well, there's language in it where Congress says that they're exercising their rules. But what it really comes down to is the Smith case and the Ballin case. And in the Ballin case, the Supreme Court said, we can look at congressional rules to ensure that they are consistent with every constitutional restraint. And in the Smith case, the Supreme Court again said, we can look at Senate rules whenever they implicate or impact individuals outside of the capital. So from the INSB charter as well, we know that here we are talking about the legislative power of Congress. And that's Article I, Section 7. It doesn't allow Congress to use Article I, Section 5 powers to legislate. And that is effectively what it's doing here. Explain that. Yes, Your Honor. So when we talk about what I'm understanding is that there's a question of, is this procedure, or is this before the passing of legislation, or is it after? And that answer comes from the Nixon v. Herndon case. And there, the Supreme Court held that you re-look at even preliminary votes to make sure that they are also consistent with the Constitution. We don't just look at the final vote. The OSMREs argued, well, they all have to pass the same threshold at the end. It sounds to me that the gist of what you're saying is that the cloture rule is unconstitutional. When combined with this... But your argument doesn't seem to depend on being combined with anything. Because the cloture rule you seem to be saying is unconstitutional because there are provisions in the Constitution you just need a majority. The cloture rule requires more than a majority. So it all turns on whether the cloture rule is a constitutionally valid rule of the Senate. I don't see how your argument depends on any other feature of the Congressional Review Act. Well, the cloture rule is unconstitutional. I don't think any court has held that it is. Then how do you have standing to challenge it? Because this is a system. If the cloture rule were declared unconstitutional, would you be any better off in this case? Would you get any remedy? Well, Your Honor, the Supreme Court answered that in the Ploutt case when it was addressing separation of powers. And there it said that these are structural protections. They do not require a particular remedy. They are not remedies for particular wrongs. And we have a structure here that Congress has built with multiple thresholds. And they, together, violate the separation of powers. But, Counsel, here, for the structure to have caused you injury, to give you standing, you must have been adversely affected by cloture. Well, we are adversely affected by cloture now in the sense that we need... Let me ask it this way. Congress would have the ability, under the Review Act, to reinstitute the String Protection Rule, wouldn't it? It would. All right. Well, yes. By passing through the Supreme Court. Has there been legislation? I'm not aware of any. It needs 60 votes to restore that. Well, no, no, no, no. It only takes a majority under the Review Act. No, Your Honor. It takes 60. Under cloture. I'm talking about under the Review Act. Couldn't they use the Review Act and negate the existing rules and allow for the String Protection Rule to be reinstituted? No. They cannot. That is, the Congressional Review Act in that section, which is 802.d.1, only works for rescinding rules. It does not work for repassing. If it rescinded the existing rule, correct? And then the agency would have the authority to go back and reinstitute the String Protection Rule, correct? No. It would take 60 votes for Congress to give that authority back to OSMRA and then OSMRA. Wait a minute. Congress, under the Review Act, could say the rule that supplanted the String Protection Rule is gone. It's eradicated. And it could do that under the Review Act, couldn't it? Well, it can't. No, it would need 60 votes at this point. Well, it didn't require 60 votes to get rid of the String Protection Rule. Correct. So the successor rule could also be eradicated in the same way with a 51 majority. Well, it's – What I'm trying to get at is that you have never tested this, your clients, as to how you have been hurt by the culture rule. Well, Your Honor, it's a system. So Brown v. Ward did not harm – Okay, I understand your system rule. Would you agree that within the system is this culture rule that has been held by some courts to be a political question and therefore should not be resolved? Correct. One court held that. It was upheld on other grounds, on appeal. That was a district court. But no court has actually upheld the culture rule based on its constitutionality. And this is not a political question because the courts decide separation of powers, equal protection and due process. I thought all Senate rules were political questions. No. Under the Smith case and the Ballin case, Senate rules are not political questions. And in the Herndon case, for example, Justice Holmes explained in particular, he said, just because it impacts politics does not make it a political question. That's nothing more than a play upon words. And what was the Senate rule in question in that case? Well, that was an equal protection case. What was the Senate rule that was in question in that case? In Nixon v. Herndon, it was not a Senate rule. Well, that's what we're talking about. We're talking about Senate rules and whether or not Senate rules are generally political matters. Okay. The Ballin case and the Smith case both impact politics, and the court ruled on both of them. In the Ballin case, it was really a question of tariffs. And it was a really big political question on what kind of majority has to vote for bills and whether the people who are not voting can— I think the numbers there, basically, I'm not sure that a majority of the present senators voted for. It was just a majority of the court. And the Supreme Court looked at that directly. And that was a huge political question based on an actual Senate rule. I mean, Judge Hart, I think, asked the question, how would you be harmed if the cloture rule is declared unconstitutional if the Review Act passed the rescinding by more than 50 votes, right? Not the rescinding, but they allowed for the stream protection rule to be eliminated. To be eliminated. Okay. Well, that was more than 50 votes. And so the point would be, even if you eliminate the 60-vote threshold, what assurance is it that you have that somehow or other you can survive trying to get the stream protection rule in place again anyway? We do not have to establish that according to the top case. The Supreme Court held that the separation of powers is a prophylactic rule, high walls and clear distinction. Well, separation of powers, if you're going back to that point, Congress delegated to administrative agencies to regulate. Why is it a separation of powers violation for Congress to decide that it wants to bound the circumstances under which an agency can regulate and the things that they do regulate? I mean, one argument you make on the substantive due process front is somehow or other there has to be some implication of misconduct or corruption. Why does that have to be the case? It seemed to me that what Congress was doing is saying, you agencies out there are legislating too much, and I don't like the fact that you're doing that, so I'm going to impose boundaries on what you can do. What is unconstitutional about that from a separation of powers point of view? Because every use of the Congressional Review Act erodes, undermines, and diminishes executive power. And where did that power come from to begin with? From Congress. Congress enacted the legislation that will allow for an agency to regulate, right? Well, Congress also, legislative entrenchment requires a perfectly equal ability to allocate power and to take away power. And these different thresholds are not perfectly equal. They do not allow Congress to use the same threshold to expand and to contract. And if they were the same, I would agree, Your Honor, that absolutely Congress would have that power. But the Supreme Court polices the separation of powers using Article I, Section 7. That is one of its methods that it uses to ensure that Congress is staying within its lane and not eroding and undermining Article II power. I see my time is up. Your time is up, but I'm going to pursue another issue we haven't discussed, equal protection. The way you put it, I think I'm quoting here from your brief, the Senate's two voting thresholds create two categories of citizens. One, citizens facing complex problems and protected by statutes that delegate authorities to agencies. Fifty-one votes can rescind these laws. And two, citizens facing simpler problems and protected by statutes directly, only 60 votes can rescind these laws. That's your position, right? That's one way to separate. Well, that's your way of doing it. That's your way of framing the equal protection issue. That's one set of groups. There's a second set of groups that we also discussed, and that is trying to help the group that is harmed by regulations or the group that is hurt by regulations. That's another distinction. Okay. Which group do I belong to? Well, equal protection applies at every point. No, no. You're distinguishing. You're saying this group is treated worse than another. You ought to be able to identify who's in which group. So I'm asking, which group do I belong to? As soon as you face a regulation, we will know which group you belong to. Really? Okay, let's take your regulation here. Okay. The Stream Protection Act. Yes, Your Honor. Which group do I belong to? Well, it depends on if it's hurting you or if it's helping you. That tells you. Well, what if you think it's hurting me and I think it's helping me? What group do I go in? Well, that depends on the actual circumstances, Your Honor. Because I'm not. We need an application of it. I'm really having a problem getting my head around these two groups. Every other equal protection case distinguishes between people, and you can say he belongs to this race, he's a male. Something about the person you can identify. He lives with non-family members in an apartment. Everybody belongs to both of these groups. At different times, perhaps. Well, depending. Well, there are people who have complex problems and people who have simple problems. Yes. That's everybody that has some complex problems and some simple problems. Well, yes, it's true. Yes, so who is discriminated against here? Name a person who's discriminated against. Well, my clients, Your Honor. Because of their view. If they were the exact same people but they had a different opinion about whether this law helps or hurts them, then they switch groups? And do your clients have no simple problems? This is not about our views, Your Honor. These are direct impacts on my clients. This regulation was helping them. It was not helping mine. You're saying they belong in Group 1 because they have complex problems. In this particular situation, yes. Okay. Do they not have any simple problems? Well, they're not protected. I mean, there's other situations where they may or may not be protected, but that is the distinction. How can we have a hard time seeing how a group, how a person is discriminated against if he or she belongs to both groups? All the time. And with respect to one group, if it's a complicated problem where they don't like the law, then they belong to one group. And if it's a complicated problem, if they like the law, they belong to another group. Can you give anything like that in the history of equal protection jurisprudence? Well, Your Honor, Congress created this separation when they started treating regulations different than statutes. And they tried to make some statutes special, and they wanted to help small businesses. And they wanted to make a new law to make it easier for small businesses to get out from under the yoke of the federal government. That was their intent. That's what they say in the congressional record. And so the small businesses are the people that Congress is trying to help. So they drafted it a little broader than that to help everybody who is hurt by regulations, who wants to get rid of a regulation. So small businesses was Congress's impact. And that's an easy line to draw. Answer my question. Can you give any example in equal protection jurisprudence where the discrimination is similar to what you're alleging here? Well, Your Honor, for example, in the Caroline products, that's what I would argue the footnote 4 was starting to talk about. Okay. But what was the group? What were the two groups that were discriminating? They didn't apply it to particular groups. But this is a very unique situation. Okay, let's say we still had the cloture rule with respect to appointment of justices. So there are some people who, I don't know how you describe the group, but you would have an equal protection claim, I assume, people who don't like the court to be activists and people who want the court to be activists. And you're distinguishing between that group, even though that rule would apply to every justice and people would be in? I don't know. With respect, Your Honor, I think that the distinction here that Congress made was based on regulations or statutes or it made it based on small businesses and other people. They made a distinction. It's just to overturn regulations. I'm trying to see who the people discriminated against are. The people are like the clients. Well, the clients are treated differently. No, they're not treated differently. They're in both groups. Well, when you talk about harmed or hurt by regulations, I would say that they are in the camp of hurt by regulations at this time. And that's one of the key points, if I could make, Your Honor, is at this time, in applying this rule to these people, we can draw these groups very easily. But you're saying they belong to the group that's hurt by because they have complex problems and they're discriminated against in comparison to those who have simple problems. So you're saying your clients never have simple problems. I'm saying at this time that we know that they are treated worse than everybody else who needs a statute, who wants protection from a statute, Your Honor. So any time a statute is passed that hurts somebody, they're discriminated against because they belong to the group that's hurt by the statute as opposed to the people who are benefited by the statute. Well, that's part of why the separation of powers issue is so important here because that is that perfectly equal requirement there. In contrast to here, you don't need groups. The Supreme Court has been very clear that to the extent you can pass, that Congress needs perfectly equal abilities to pass statutes. Well, let me just ask one more question. Do you have any case where the Supreme Court has found an equal protection violation when it hasn't said this group, these particular people, are treated worse than these particular people? I think here we have groups that are particular as well, and the Supreme Court said any distinguishing characteristic, that's the standard. Do you have a question? Just one quick follow-up question. You cite Caroline Products' footnote for a number of times. There are a couple of things going on in that footnote. One relates to discreet and insular minorities. Others relates to laws that sort of block process. Which part of that are you focused on? I assume not the discreet and insular minority part. Correct, Your Honor. Not that. Correct. Okay, so it's the laws that block process. Correct. Okay. And if I could add to that, Your Honor, that sentence there, that part, I realize that's only a plurality. But that part is, again, actually re-enunciating. It just follows along the same kind of legislative entrenchment principles that the Supreme Court has always followed. Because there they're saying, are you making it harder to pass and repeal laws? And the Supreme Court has been very clear that that is not an acceptable method of defining the legislative process. Thank you. Thank you, Your Honor. Your Honors, may it please the Court, Martin Totaro for the Federal Respondents. Plaintiffs challenge Congress' decision to rescind the stream protection rule by claiming that the Congressional Review Act is unconstitutional. There are several fatal flaws with that argument. First, plaintiff's challenge is to the Senate's cloture rule, but it is undisputed that Congress' disapproval resolution, signed here by the President, was not subject to cloture. Plaintiffs do not have standing to challenge the Senate's internal rules. Second, and on the merits, even if- Wait, you're not saying in general they don't have standing. You're saying they don't have standing with respect to cloture rule because they weren't injured by the cloture rule. Correct, Your Honor. But I think as I heard in the opening, although I'm not sure, without the cloture rule, plaintiffs don't have a case. But plaintiffs don't have any current injury because the cloture rule simply isn't that issue here. So I think that knocks off actually all the claims on standing because I think plaintiff's argument essentially proceeds in three steps. I think first is that unless specified in the Constitution, all legislation must be enacted through simple majority. Second, the cloture rule unconstitutionally encroaches on that requirement. And third, the Congressional Review Act allows disapproval resolutions to be enacted by simple majority, but a rule cannot be reenacted in the future without being subject to cloture. But plaintiffs don't have standing to raise that argument because the string protection disapproval rule was enacted by simple majority rules. Now plaintiffs say that a future rule can't be enacted except through cloture, but that's not a current injury. And I think that fundamental distinction is what makes this case, fundamental principle is what makes this case distinct from like Brown v. Board of Education where of course the plaintiff suffered a current injury. Here plaintiffs have suffered no current injury because the disapproval resolution, again, signed by the president, was not subject to cloture. Did I understand you to say they don't have standing on any issue here? I don't think any of their claims have any merit, even possible merit, absent being tethered to the cloture rule, but the cloture rule simply isn't at issue in this case. Well can't they argue that it's okay to have a cloture rule, but you can't have an exception for the Congressional Review Act? I thought that's one of their arguments. I don't think that's one of their, it's a little confusing to be clear here. I think their argument is that the Congressional Review Act properly proceeds by majority rules, but the problem is that it imposes a requirement in the future for future rules to be subject to cloture. So I think that's the fundamental problem because they're not harmed now by the Congressional Review Act through a disapproval resolution that was enacted by a simple majority. I thought they were arguing what I just said. How would you respond to that? That it's not, they do challenge the cloture rule, but they also say you can't have a cloture rule that has an exception in the Congressional Review Act. And that would seem to be an injury against, I guess, Congress maybe? I don't see how it's relevant to this particular case. If making that distinction was unconstitutional, then there's a question of a remedy, and one possible remedy would be to say the cloture rule has to apply to all legislation, and therefore the rescinding of the regulation under the Congressional Review Act was unconstitutional. Wouldn't they have standing to make that claim? If Plaintiff's argument is that the alleged flaw in the Congressional Review Act is that it allowed rules to be rescinded in a vacuum by a simple majority vote rather than 60 votes, then I think they would have standing to raise that challenge. I'm just not sure that that is actually what they're claiming. I think if… Go ahead. But would they have standing because… Okay. If the Congressional Review Act allowed for rescinding of regulations by a simple majority, if their operative principle is that a simple majority is what the Constitution requires, where would their standing come in? Because there was more than a simple majority that rescinded the stream protection rule. This is the fundamental tension or confusion in Plaintiff's theory. So I think what Judge Holmes, what you just said, is in conflict with what Judge Hart said is the Plaintiff's core theory, and so it's just, it's not… I'm not saying core theory. One of their theories is equal protection. One of their theories is equal protection. They're saying that you can't have the Congressional Review Act not require cloture when other statutes do require cloture, that there's a distinction there. And for equal protection, I think the problem there is that, you know, repeatedly in their brief, pages 61 to the opening brief, page 5 of the reply, they say that the problem lies not in the Congressional Review Act, but in the cloture rules themselves. And so the harmed party, I don't see how it would be, you know, someone subject to a regulation that is disapproved by majority vote. And if I could just clarify one point, and I think it's an important one, on the cloture rule, for every piece of legislation subject to Senate Rule 22, the Senate makes a choice whether to proceed by majority or subject to cloture. We saw this, for example, in 2013, when there was a federal court of appeals nominee who, under the text of Senate 22, was subject to the cloture rule, but a majority of senators just said, we're not going to apply the cloture rule in this scenario. And so it is not the case that Senate Rule 22 is set in stone, even today. It's every time there's legislation, a majority of senators have the ability to say, no, we will proceed by majority vote, which is precisely what happened in 2013 with respect to federal court of appeals nominees and most executive branch. They can decide by saying we are not going to apply the rule in this case or we're making an exception to the rule. Is that what you're saying? Yes, what happened in 2013 was a cloture vote failed, a senator filed a reconsideration motion, there was a point of order on the cloture on the topic that required a majority vote. The point of order could be accepted or refused. And if refused, a senator can then prevail again and then prevail by majority, which is what happened in 2013 with the judge at issue there. And then the court, although the text of Rule 22 didn't change, the Senate said court of appeals nominees and most executive branch nominees proceed by majority vote despite Rule 22. And so the principle there is that the Senate is in charge of its internal rules and can deviate from them in any particular case. Let me follow up to make sure I understand your point about standing. Is the idea that at bottom what we end up with on your point three is that a future rule would be subject to cloture, but a rule that disapproves regulations is a simple majority. And your point that why there is not standing is because there is no future rule pending. Correct, coupled with the plaintiff's claim, for example, on page five of the reply that Senate 7 sets each house's voting threshold at a simple majority, changing voting thresholds violates it. But here we're talking about a disapproval resolution passed by a majority of both houses signed by the president. So, Judge Holmes, I think you have it exactly right. I see that my time is dwindling. I wonder if I could turn to the merits unless there are further questions on standing. Go ahead. So for separation of powers, the Congressional Review Act allows agency rules to be rescinded through a disapproval resolution authorized by the House and Senate and signed by the president. It's what happened here. And I think the plaintiff's theory comes through most prominently on page 36 of their brief where they say reductions in agency authorities reduce executive power. And that is simply not the case for separation of powers purposes. We know from case after case that agencies are able to exercise the authority that Congress delegates to them. And if I could just talk about the pocket veto for a second because I know it came up in the reply and we didn't have a chance to discuss the merits.  It's simply irrelevant here because the president signed the disapproval resolution. Plaintiffs also never explained why the pocket veto is a constitutional requirement. Why, for example, the Senate would be required to adjourn for a certain number of days to allow the president to exercise that authority. But again, the key principle is that it's just not present here because plaintiffs waived the argument by choosing not to raise it until the reply. On equal protection, plaintiffs asked this court to apply interim veto. But the point they were making on the pocket veto is that ordinarily legislation could come alive if the president just sits on his or her hands and doesn't do anything. Here, under the Congressional Review Act, it requires the president to sign for the legislation to live. Is that not right? It's just hard for me to say because I think it's a sentence in the reply and so I'm not sure exactly. Well, you hear me saying it now and I'm asking you, what's wrong with that argument? I mean, the argument is that under the pocket veto, legislation goes into effect if the president doesn't sign it. In the Congressional Review Act, the president has to sign it for it to go into effect. So that's what I'm saying. Right, and, Your Honor, I'm not sure there is a constitutional requirement that all legislation be subject to the pocket veto. And in any event, after the Supreme Court's case in Millel-Canning, if the Senate says it's in session during a pro forma session, it's in session. So it's not even clear the next time the Senate won't be in session. If I could briefly turn to equal protection. What I'd like you to turn to, which I didn't see you turning to at all in your brief, is explaining why this whole concept of a system doesn't have any bounds, I mean, logical or otherwise. His argument, as I understand the argument of opposing counsel, is you can try to disaggregate their challenges as it relates to the Congressional Review Act and cloture, but that's not what they're doing. They're talking about the fact that the interplay and the operation of them together works in unconstitutional effect. I saw you nowhere address that. So explain why this whole together interaction idea has no bounds. Your Honor, I think it comes up in our response to their equal protection challenge where they're talking about a system categorizing people according to people subject to the Congressional Review Act versus people subject to the cloture rule. And so I think what plaintiffs seek to do is apply intermediate scrutiny to a category, to an undefined but conceitedly non-suspect class. So even if the plaintiffs are correct with their system argument, that would still be a non-suspect class subject to rational basis review. It wouldn't be because I'm able to identify different categories of people, I automatically get some sort of heightened level of review. Do you accept the premise that you can have an operation of the cloture rule and a piece of legislation here, the Congressional Review Act, the operation of the two together in principle could work an unconstitutional effect that the two might not independently? No, Your Honor, because, again, that cloture rule, every time the cloture rule comes up, the Senate may proceed by majority vote. And the non-suspect class we're talking about here, as I think Judge Hart's explained better than I could here, is a class of literally everyone. And so that is just not something that this court or any court I am aware of has ever identified as warranting any intermediate scrutiny. And then, similarly, on due process, what the Congressional Review Act does is that it provides Congress with an expedited procedure to review and disapprove federal regulation and that assists, as the Ninth Circuit held, Congress in discharging its responsibilities for overseeing congressional agencies. In closing, I just want to be clear. I think under Plaintiff's theory, most modern legislation is unconstitutional because most modern legislation, subject to some exceptions discussed in the brief, are subject to cloture rule. And so I think that is the sort of implication of our argument that demonstrates that it is incorrect. I am, of course, happy to answer any questions, but otherwise we ask that the district court judgment be affirmed. Thank you. Thank you. Your time has expired. Case is submitted. Counsel excused.